**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:  BKY # 18-50547
 Chapter 12
Manner Dairy, Inc.
 Debtor.

**MODIFIED
CHAPTER 12 PLAN OF REORGANIZATION
DATED SEPTEMBER 6, 2019**

### ARTICLE I: Summary of the Plan

This plan shall continue for a period of five years from its effective date. The property of the debtor is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Costs of administration are being paid on the effective date of the plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The debtor will pay the Trustee no less than all disposable income, as that term is defined in 11 U.S. C. Section 1225, for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

### ARTICLE II: Definitions

- "Creditors" means all entities having a claim against the debtor.
- "Debtor" shall mean Manner Dairy, Inc.
- "Secured Creditor" means a creditor with a lien or security interest in property of the debtor.
- "Claim" means a timely filed claim which has been allowed by the Court or a secured claim which is dealt with in the plan whether or not a claim is filed.
- "Effective Date" means the date on which the Order of Confirmation becomes final.
- "Trustee" means the Chapter 12 Trustee.
- "Disposable Income" means all income received by the debtor annually after deducting operating expenses, salaries to insiders) and plan payments.

### ARTICLE III: Liquidation Test

The debtor's net equity in its property, after deducting the amounts of the

1

secured claims and exemptions is $44,086.64. General and priority unsecured creditors (but not including attorney's fees) will receive no less than $44,086.84 over the life of the plan. In addition, if there is during the duration of the case a recovery of preferences (see Article VII), the debtor will turn over the net proceeds of such recovery to the trustee for distribution to the unsecured creditors. A liquidation analysis is attached as Exhibit A.

## ARTICLE IV: Disposable Income

The debtor's projection of gross income, operating expenses, salary expenses and plan payments indicate that it may have operating income of $193,053.00 and expenses of $158,336.00 as shown on Exhibit B, Cash Flow Projections and for the period shown on said Exhibit B. If necessary, the Manner Dairy shareholders plan to defer their Manner Dairy salaries until there are sufficient funds for monthly operating expenses and plan payments. For the term of this plan, all of the debtor's disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration and distribution to unsecured creditors. All disposable income (future earnings not necessary for the continuation, preservation and operation of the farm and for payment of wages, including salaries to insiders) for five years following the effective date, shall be submitted to the Trustee for distribution. All creditors with Class 4 – General Unsecured Claims shall be paid a pro rata share of disposable income after administrative and priority claims have been paid.

## ARTICLE V: Salaries to insiders

The debtor's projection of salaries to be paid to insiders is $60,000.00 annually. The debtor shall limit payments for salary to insiders to said amount, unless said amount is modified by Court Order. The debtor projects that the insiders may have to give back a portion of this amount each year to make the payments required under the plan. Such givebacks shall be carried forward for the duration of the plan; if in any given year the debtor's disposable income allows it to catch up said givebacks, the debtor will do so and pay the net disposable income to the trustee. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## ARTICLE VI: Classification and Treatment of Claims

**Class 1**. **Costs of Administration**. This Class includes compensation and expenses of professionals and court costs and all expenses incurred by the debtor after the filing of their petition and before the entry of the order of confirmation and expenses of professionals and court costs, shall be paid in full

on the effective date of the plan, provided however, that professionals may agree to be paid in installments rather than on the effective date. In such case, the installments shall be deducted from the disposable income to be paid by the debtor to the trustee under Article IV. Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court. The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The debtor shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtor, unless otherwise ordered by the Court. All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtor if specified in the Plan. If a short term loan is needed from shareholders to cover monthly expenses, it will be paid back as soon as income is obtained.

**Class 2:**

**A. Definition of Secured Claims.** Class 2 consists of the following secured claims:

2.1 Farm Credit Services of America, secured by various farm equipment This debt is secured by a skidloader, a forage harvester (chopper), a 7800 tractor, a 4440 tractor, a 4430 tractor, a 313 discbine, corn and hay heads, and a manure spreader. Amount at inception of the case: $149,444.26.

2.2 CNH Capital America, LLC, secured by a sprayer and Meyer forage box. Amount at the inception of the case: $48,418.62.

2.3 Compeer Financial, secured by a "blanket lien" on equipment and cattle. Amount at the inception of the case: $164,035.96.

2.4 Republic Bank, secured by a pickup truck. Amount at the inception of the case: $5,277.16.

2.5 St. Louis County Auditor/Treasurer (real estate taxes due and payable in 2018), secured by the debtor's real property. Amount at the inception of the

case:  $2,274.48.

2.6    Zions Agricultural Finance, secured by the debtor's land and milking equipment. Amount at the inception of the case:  $236,583.26.

2.7  Minnesota Select Sires, secured by statutory lien. Amount at inception of the case: $7,224.68.

B.  Treatment of secured claims.

2.1    Farm Credit Services. The debtor will surrender to Farm Credit Services of America the following property: forage harvestor, the corn and hay heads, and the skid steer. Amount of collateral secured to claim after equipment is surrendered is $60,500.00. The appraised total is already a meet in the middle amount between auction value and market value, which covers the use of equipment. Debtor will pay the amount of collateral by making quarterly installments of $3,025.00, including interest at the rate of 5.5% per annum. The first such payment will be paid no later than December 31, 2019. Thereafter, payments will be made the first day of each calendar quarter, starting in October 2020.  Payments will continue until the sixth anniversary of the effective date where a balloon payment will be made to satisfy the interest due. Attorneys fees, if any, will be as allowed by the Court.

2.2   CNH Capital America, LLC, secured by a sprayer and Meyer forage box. The debtor will surrender to CNH Capital America, LLC, the Meyer forage box. The amount of collateral secured to the claim is $28,000.00. The amount of collateral will be paid over five years by making quarterly payments in the amount of $1,400.00.  The first quarterly payment will be made on July 17, 2020. Thereafter, payments will be made on the first day of each calendar quarter, starting in October 2020. Payments will continue until the sixth anniversary of the effective date. Payments will include interest at the rate of 5.5 per annum. Interest will be paid as a balloon payment at the end of the plan. Attorneys fees, if any, will be as allowed by the Court. Motion for relief from stay is granted for the Meyer Forage Box.

2.3 Compeer Financial, secured by a "blanket lien" on equipment, cattle and crops. The principal amount of Compeer's claim as of July 22, 2019 is $157,947.23, in addition to accrued interest, late fees, and costs of collection.

The debtor will surrender to Compeer Financial the following:

- Farmall 1066
- JD 4020 with 720 Loader
- Lorenz Grinder Mixer
- 1460 Combine
- 1020 Flex Head
- 1063 Corn Head
- Header Cart
- Penta 5620
- Schuler Vertical Mixer
- H&S Feeder Wagon
- Felling Trailer
- JD Cab
- Kuhn 8118 Manure Spreader
- 44 Green Stalls
- Valemtal Conveyors
- H&S Rake
- 4 H&S Forage Wagons
- Compeer Equity/Patronage

The amount of collateral secured to the claim after surrender is $122,084.94. The value of the collateral will be paid by making quarterly installments of $5,500.

The first such payment is due March 1, 2020. Thereafter, payments will be made quarterly, starting on June 1, 2020, and on September 1, 2020, December 1, 2020, and on like dates during each subsequent calendar year. Payments will include interest at the rate of 5.8% per annum.

Payments will continue until the sixth anniversary of the effective date, at which time any remaining balance on the obligation shall be paid.

During the repayment period described in this section, Compeer will retire the surrendered Compeer Equity in the ordinary course of its business, and apply all equity payments realized from the retirement of the Compeer Equity to the debtor's obligations described in this section.

Over the course of the plan, the debtor may sell or replace equipment upon written consent by Compeer. The debtor will grant Compeer Financial a security interest in new equipment received from a trade and any net recovery will be paid toward Compeer Financial debt. Compeer Financial shall retain all liens. Compeer is entitled to an unsecured claim for any deficiency. Compeer's debt

may be prepaid at any time without penalty.

2.4   Republic Bank, secured by a pickup truck. Amount at the inception of the case: $5,277.16. This claim will be paid in quarterly payments of $261.36. The first payment will be made December 31, 2019. Thereafter, payments will be made on April 1, 2020, July 1, 2020, October 1, 2020, and January 1, 2020 of each year. Payments will include interest at the rate of 5.5% per annum. Attorneys fees, if any, will be as allowed by the Court.

2.5   St. Louis County Auditor/Treasurer (real estate taxes due and payable in 2018), secured by the debtor's real property.  Amount due, $2,274.48.  The debtor will pay this claim in full no later than the first anniversary of the effective date.  The debtor will pay real estate taxes due and payable in subsequent years as they are due and payable.

2.6   Zions Agricultural Finance, secured by the debtor's land and milking equipment. Amount at the inception of the case: $236,583.20. Payments totaling $7,052.50 were made after filing. This claim will be paid by making two payments of $7,391.50. The first payment due no later than December 31, 2019. The second payment due no later than July 30, 2020. Thereafter payments of $14,783.00 will be made semi-annually, the first such payment will be made no later than December 31, 2020. Payments will include interest at the rate of 6.21% per annum. Payments will continue through year 2028, at which time the unpaid balance shall be due and payable. Attorneys fees, costs, and expenses, shall be in addition to the amount stated above, upon approval by the Court.

2.7  Minnesota Select Sires, secured by statutory lien. Amount at inception of the case: $7,224.68. This claim will be paid by making annual payments in the amount of $1,806.17. Payments will include interest at the rate of 4.74% per annum.  The first payment to be due on the first anniversary of the effective date. Thereafter, payments will be made July 17 of each year until paid in full. Attorneys fees, if any, will be as allowed by the Court.

Payments on all secured classes (except the real estate taxes due) will be made by making payments to the trustee, plus the trustee's commission of 5%.  The trustee will distribute the payment to the creditor as soon as administratively convenient.

**Class 3:  Priority Unsecured Claims.** Class 3 consists of all claims entitled to priority under § 507, including the following:

3.1    Internal Revenue Service: Priority claim:  $44,017.39.  The debtor will pay

this claim over five years by making quarterly payments of $2,751.08. The first payment will be made on the first anniversary of the effective date. Thereafter, payments will be made the first day of each calendar quarter, starting in October 2020, until paid in full.

3.2     Minnesota Department of Revenue, Priority claim: $956.43. The debtor will pay this claim on the first anniversary of the effective date.
3.3     Department of Employment and Economic Development: Priority claim: $349.00. The debtor
will pay this claim on the first anniversary of the effective date.

Payments on classes 3.1, 3.2 and 3.3 will be made by making payments in the stated amount to the trustee, plus the trustee's commission of 5%.  The trustee will distribute the payment to the creditor as soon as administratively convenient.

**Class 4.  General Unsecured Claims.**  Class 4 consists of general unsecured claims, claims of all unsecured creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, claims resulting from the value of a secured claim being of a value less than the security held against held claim, and/or those secured creditors whose claims are determined to be unsecured, claims of all accommodation parties and co-makers or loans of which the debtor are the principal, and claims for taxes and penalties which are not included in any other Class.  This includes any deficiency owed to the Class 2.1 creditor.  The claims which are presently filed as unsecured claims add up to $462,075.03.  In addition, when as and if recoveries of preferences are received, the debtor will transmit the net recovery to the trustee for distribution to class 4 creditors. (See Article VII).

**Class 5.  Executory Contracts and Leases**.  Class 5 consists of executory contracts and leases existing as of the date of filing.  All such executory contracts and leases are rejected unless specifically assumed in this section.  The debtor assumes the following executory contracts and leases:

5.1 Margin Protection Contract.  The debtor is a party to a Margin Protection Contract with the United States Department of Agriculture, Farm Service Agency.
5.2 Leases with landlords in which the debtor is the lessee are assumed.

**Class 6:  Treatment of Certain Post-Petition Government Tax Claims**. Pursuant to 11 U.S.C. § 1232(a), the claims of the IRS and the MDR prior to discharge as a result of the sale, transfer, exchange, or other disposition of property used in the Debtor's farming operation shall be treated as unsecured claims arising before the date of filing and are not entitled to priority, i.e., part of

Class 4. If the Debtor files a tax return for a period for which such a claim arises, the Debtor shall prepare and serve a notice of the claim on the IRS and the MDR in accordance with 11 U.S.C. § 1232(d)(2) and, to the extent that the IRS, the MDR, the Debtor, or the trustee timely files a proof of claim pursuant 11 U.S.C. § 1232(d)(3), the trustee shall pay the IRS and the MDR as general unsecured creditors.

## ARTICLE VII: POTENTIAL PREFERENCES

Preferences. The debtor believe certain preferential payments may be recoverable. Within one year of plan confirmation the debtor will retain independent counsel to review the transactions and determine if the recovery of a preference is feasible. Upon review, the debtor will apply to the Court for appointment of independent counsel to prosecute preference actions if such action is deemed practical. Any net recovery will be paid to the trustee for distribution to Class 4 creditors as the net recoveries is received. The Court shall retain jurisdiction over the debtor and the potential defendants. Any proposed settlements will be subject to Court approval.

## ARTICLE VIII: Execution of Plan and Cash Flow Analysis

The debtor proposes to continue its farming operations and make the plan payments out of farm or other income. The debtors' projections of income, operating expenses, and plan payments are attached as Exhibit B. Past income and expenses are attached as Exhibit C.

## ARTICLE IX: Retention of Liens and Incorporation of Documents

All creditors whose claims are treated as secured in this plan shall retain its liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference as if more fully set out in this plan. This plan and the Order confirming the plan may be recorded in the Office of the County Recorder or Registrar of Titles to evidence the modification of any recorded mortgage. Debtor does not agree to Compeer's claim that they have a lien on the crops that were planted on the day that debtor filed for bankruptcy

## ARTICLE IX: General Provisions

- The Court shall retain jurisdiction over the debtor and its property for the

term of the plan.
- As part of the continuing farm operation, the debtor shall submit operating reports and bank statements on a quarterly monthly basis to the Chapter 12 Trustee. The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.
- All potential claims against Compeer Financial and Farm Credit Services of America are reserved.

Signed:

Manner Dairy, Inc.                                                            September 6, 2019

by / e / Jeremy Erspamer
its president

   /s/ Sam Calvert
attorney for debtor
Sam Calvert MN ID 1431X
1011 2nd ST N STE 107
St. Cloud MN 56303
320-252-4473